UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMAR SAFADI, individually, and on behalf of all others similarly situated, and on behalf of the general public,<br><br>                    Plaintiffs,<br>         v.<br><br>CITIBANK, N.A.,<br><br>                    Defendant. | Case No.: 12-1356 PSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY LITIGATION AND GRANTING MOTION TO COMPEL ARBITRATION**<br><br>**(Re: Docket No. 19)** |

Defendant Citibank, N.A. ("Citibank") moves to stay the suit brought by Plaintiff Amer Safadi ("Safadi") and to compel Safadi to engage in arbitration pursuant to the deposit agreement between the two parties and the Federal Arbitration Act ("FAA"). Having considered the parties' papers and oral argument, Citibank's motion is GRANTED.

## I. BACKGROUND

In February 2011, when Safadi opened his two deposit accounts with Citibank, the bank offered new customers 30,000 American Airlines miles if they opened a particular checking account and completed a qualifying activity. Having satisfied the two conditions, Safadi received

1

Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

from Citibank the 30,000 miles.  Citibank subsequently reported Safadi's miles to the Internal Revenue Service ("IRS") on a 1099 form in January 2012 and claimed the value of the 30,000 miles was $750.

According to Citibank, when he opened his accounts, Safadi received a copy of Citibank's "Client Manual" and "Marketplace Addendum" (collectively "Agreement"), which together constitute its agreement with account customers.  Neither party disputes that Safadi executed a signature card acknowledging he would be bound by the terms of the Agreement, but Safadi disputes receiving the Agreement, and maintains that even if he received the Agreement in the packet of materials given to him, it was only after he executed the signature card.

The Agreement includes an arbitration provision that allows either Citibank or the customer to elect to proceed with a dispute in mandatory arbitration.  The provision covers any disputes "relating to or arising out of [the] deposit . . . account," including "claims based on any theory of law, contract, statute, regulation, tort (including fraud or any intentional tort), or any other legal or equitable ground" and "claims made as part of a class action or other representative action, it being expressly understood and agreed to that the arbitration of such claims must proceed on an individual (non-class, non-representative) basis."  The provision lays out how the costs of the arbitration will be divided between the parties, with Citibank obligated to "advance or reimburse filing and other fees" to the customer "if the arbitrator rules that [the customer] cannot afford to pay them or finds other good cause for requiring" Citibank to do so.  The provision also delegates determination of the arbitration section's enforceability to the arbitrator.

In spite of the arbitration provision in the Agreement, in March 2012, Safadi initiated this action.  He alleged that Citibank never told him, or other new customers similarly situated, that it would report the 30,000 miles to the IRS, how it would value the miles, and if the miles would expire or change value.  Safadi also alleged the miles had no value at the time Citibank provided

2
Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

them, and as such he wrongfully incurred a tax liability based on the erroneous 1099 form. He claims Citibank's actions constitute violations of 2 U.S.C. § 7434, of California and other various states' consumer protection statutes, and of the common law protection against fraudulent concealment, breach of contract, and unjust enrichment. He seeks to certify a class action against Citibank on behalf of similarly situated customers of the bank.

Citibank now moves to stay the action and compel Safadi to participate in arbitration pursuant to the Agreement and the FAA.

## II.  LEGAL STANDARDS

Section 2 of the FAA renders commercial arbitration clauses "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[1] The Act reflects a "liberal federal policy favoring arbitration agreements,"[2] and so courts may invalidate arbitration clauses only in situations where "generally applicable contract defenses, such as fraud, duress, or unconscionability" apply.[3]  "[T]he FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[4]

State law contract principles govern whether a defense is applicable against enforcement of an arbitration clause, but their reach is limited.[5] The FAA preempts state law defenses "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."[6] In other words, the court looks to state contract law to determine whether an arbitration

---

[1] 9 U.S.C. § 2.

[2] *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

[3] *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 618, 652 (1996).

[4] *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

[5] *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2001).

[6] *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011).

3
Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

agreement is invalid but may not apply any state law targeting arbitration clauses. Here, the parties do not dispute that California state law governs the applicability of a defense.

If the court finds a valid arbitration agreement exists and the dispute falls within the scope of the agreement, Section 3 of the FAA provides that the court must stay the proceeding until arbitration occurs.[7] The court may also compel the parties to participate in arbitration according to the terms of the agreement pursuant to Section 4.[8] When determining whether compelling arbitration is appropriate, the court employs a similar standard as used for motions brought pursuant to Fed. R. Civ. P. 56.[9] "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."[10] To establish a dispute as to a material fact, the non-moving party "must submit evidentiary facts showing that there is a dispute of fact to be tried" if the moving party "has substantiated the entitlement by a showing of evidentiary facts."[11]

### III.  DISCUSSION

Citibank argues that because the Agreement with Safadi contained a valid arbitration provision covering the dispute Safadi raised in his suit, the court should stay Safadi's suit and compel him to participate in individual arbitration. Safadi replies his dispute about whether he received the Agreement before or after he executed the signature card raises a genuine issue regarding whether the Agreement is a valid contract. He also argues that even if the Agreement is valid, the arbitration provision is unconscionable under California law and, therefore,

---

[7] 9 U.S.C. § 3.

[8] *Id.* § 4.

[9] *See Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

[10] *Three Valley Mun. Water Dist. V. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

[11] *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1168 (C.D. Cal. 2011).

4
Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

unenforceable.  He does not dispute, however, that if the Agreement is valid and enforceable, his suit falls within the scope of the arbitration provision.

### A.     Scope of the Inquiry

The court first addresses the scope of its inquiry into the validity and enforceability of the arbitration provision.  The Agreement states, in part, that disputes covered by the arbitration provision include "claims relating to the enforceability or interpretation of any of [the] arbitration provisions."[12]  In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court addressed the extent to which courts may consider the enforceability of an arbitration agreement when the contract delegates that determination to the arbitrator.[13]  In *Rent-A-Center*, the arbitration agreement had a delegation provision[14] that stated: "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."[15]  The Court instructed that delegation provisions concern "'gateway' questions of 'arbitrability,'" which are "simply additional, antecedent agreement[s]" courts should enforce.[16]

The Court further explained that a delegation provision limits review of an arbitration agreement.[17]  A court may consider contract defenses to only the delegation provision; it may not consider defenses to the arbitration provision as a whole because that lies in the arbitrator's

---

[12] Decl. of Mary C. Myers Ex. 2 at 27.

[13] *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-78 (2010).

[14] The Court adopted the term as shorthand for the provision delegating enforceability determinations to an arbitrator.  *Id.* at 2777.

[15] *Id.* at 2777.

[16] *Id.* at 2778.

[17] *Id.*

5
Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

purview.[18]  In essence, if a court finds a valid agreement exists and no defense applies to the delegation provision, the inquiry ends.[19]  It must stay the suit, compel arbitration, and allow the arbitrator to determine whether the arbitration agreement and the rest of the contract are enforceable.[20]

Because the Agreement at issue here contains a similar delegation provision, the court may only consider the validity of the contract and the enforceability of the delegation provision.  As a result, Safadi's arguments regarding the unconscionability of the Agreement or its arbitration section are irrelevant to the court's limited review.  The court may not determine the enforceability of either the Agreement or the arbitration section if a valid contract between the parties exists.[21]  Safadi's arguments, however, address only the arbitration section as a whole,[22] and so the court is limited to reviewing only the validity of the contract before determining whether to compel arbitration.[23]  Any further issues of enforceability of the arbitration provision fall within the purview of the arbitrator.

**B.    Existence of a Valid Agreement**

Citibank argues that no dispute exists regarding its formation of a contract with Safadi that includes the delegation provision.  It points to its "practice and requirement" to give new customers copies of the Agreement "at the time they open a deposit account at a Citibank branch and sign the same form of signature card that Safadi signed."[24]  It further argues that, by executing the signature

---

[18] *Id.* at 2779.

[19] *See id.* at 2779.

[20] *See id.*

[21] *Id.* at 2778-79.

[22] *See* Pl.'s Opp'n to Mot. to Compel Arbitration 9-13.

[23] *See Rent-A-Center, West, Inc.*, 130 S. Ct. at 2778 (noting that only validity challenges questioning the agreement to arbitrate may be considered by the court).

6
Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

card, Safadi bound himself to the terms of the Agreement, including the delegation provision, regardless of the timing of his receipt of the details of the Agreement.

Safadi responds that a genuine dispute exists regarding whether he entered into a contract with Citibank because he states he "was not given a copy of [the Agreement] before opening the new account and signing the [s]ignature [c]ard."[25] He claims that as a result he "had no opportunity to review the terms and conditions contained in [the Agreement]" and therefore "had no ability or opportunity to negotiate any of [its] terms and conditions."[26] Although he admits that after he opened the account he "was then given a package of documents and materials concerning the new account," Safadi is unaware whether the Agreement was "included in this package of documents and materials."[27] Safadi does not dispute that he signed the signature card when he opened the accounts.

For a contract to form under California law, the parties must mutually assent "to the same thing, in the same sense."[28] Safadi suggests that because he did not receive the Agreement before he executed the signature card, he could not have assented to its terms because he had no knowledge of its contents. But, Safadi misconstrues the requirement of a "meeting of the minds" for contract formation. By signing the signature card, Safadi assented to the Agreement governing his relationship with Citibank. A pillar of contract law is the premise that parties are bound to the

---

[24] Decl. of Mary C. Myers ¶ 8.

[25] Decl. of Amar Safadi ¶ 4.

[26] *Id.*

[27] *Id.* at ¶ 6.

[28] *Banner Entm't, Inc. v. Superior Ct.*, 62 Cal. App. 4th 348, 358-59 (1998).

7

Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

contracts they enter, regardless of whether they read the contract before consenting to its terms.[29] That premise extends to form contracts such as the Agreement.[30]

Safadi does not claim that Citibank refused to provide him with the terms of the Agreement prior to his signature; he only alleges that it did not provide him with the terms prior to his signature.[31] He also does not claim that Citibank never provided him with the Agreement; he only alleges that he cannot recall whether the Agreement was within the packet of material he received after he opened the accounts.[32] In essence, Safadi's allegations reveal only that he agreed to be bound to terms that he never considered and about which he failed to inquire. His failure to inform himself of the terms of a contract he entered cannot now excuse him from the commitments under that contract.[33]

Because Safadi does not dispute signing the signature card that stated he would be bound by the terms of the Agreement, no genuine issue of material fact exists. There is a contract between Safadi and Citibank regarding the deposit accounts, and the delegation provision is part of that contract.

## CONCLUSION

Because there is a valid contract between the parties, the court must give effect to the arbitration provision requiring any further enforceability determinations to be made by the arbitrator. Citibank's motion to stay the suit and compel arbitration is GRANTED. Accordingly,

---

[29] *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (noting the general rule in contract law that parties signing a contract are bound to its provisions and "cannot complain of unfamiliarity with the language of the instrument"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) ("Competent adults are bound by such [form contracts], read or unread").

[30] *See Blau v. AT&T Mobility*, Case No. C 11-00541 CRB, 2012 WL 10546 at *4 (N.D. Cal. Jan. 3, 2012).

[31] Decl. of Amar Safadi ¶ 4.

[32] *Id.* at ¶ 6.

[33] *See Blau*, 2012 WL 10546 at *4 (citing cases where plaintiffs' failures read terms of contract did not excuse their obligations under contract).

8
Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

IT IS HEREBY ORDERED that Safadi and Citibank shall participate in arbitration according to the terms set forth in the arbitration section of the Agreement.

IT IS FURTHER ORDERED that this entire action shall be stayed pending the outcome of the parties' arbitration.  Citibank will answer or otherwise respond to Safadi's complaint within thirty days of the lifting of the stay.

**IT IS SO ORDERED.**

Dated: October 2, 2012

_____
PAUL S. GREWAL
United States Magistrate Judge

9

Case No.: 12-1356 PSG
**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**